IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **HEATHER PERROW,** | : |
| **Plaintiff,** | : Case No. 2:09-cv-670 |
| v. | : JUDGE MARBLEY |
| **GRAND CANYON EDUCATION, INC.,** and **GRAND CANYON UNIVERSITY, INC.,** | : Magistrate Judge Kemp |
| **Defendants.** | : |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Grand Canyon Education, Inc.'s ("GCE") Motion to Dismiss for Lack of Jurisdiction (Doc. 4) and Renewed Motion to Dismiss for Lack of Jurisdiction (Doc. 21), and Defendant Grand Canyon University, Inc.'s ("GCU") Motion to Dismiss for Lack of Jurisdiction (Doc. 6) and Renewed Motion to Dismiss for Lack of Jurisdiction (Doc. 22). For the reasons stated below, Defendants' Motions are **DENIED**.

### II. BACKGROUND

### A. FACTUAL BACKGROUND

GCE is a Delaware corporation with its principal place of business in Phoenix, Arizona. GCU is an online university also based in Phoenix. GCE is the owning and operating entity of GCU. Plaintiff Heather Perrow enrolled in online courses offered by GCU after conducting an online search for web-based degree programs. (Perrow Aff. at ¶ 5.) Perrow got in touch with an enrollment counselor, Mr. Brand, who assisted her in filling out the requisite forms for enrollment and financial assistance. (*Id.* at ¶ 7.) Perrow was informed that the program she had

selected, the Master of Arts in Teaching Program of Study, was the appropriate program for her educational background. (*Id*.) Perrow was assigned a username, password, and GCU student e-mail account. (*Id*. at ¶ 10.) Perrow used that information to log in to the GCU website to retrieve her course schedule and materials. (*Id*. at ¶ 12.) Perrow purchased her textbooks through the GCU website and had them delivered to her home in Canal Winchester, Ohio. (*Id*. at ¶ 15).

Upon completion of her GCU coursework, Perrow contacted GCU to inquire about applying for student-teaching positions in central Ohio. (First Am. Compl. at ¶ 17.) Perrow was then informed that she had completed the incorrect program, and that the program she had completed did not make her eligible for student teaching positions. (*Id*.) She was therefore unable to receive a teaching certificate from the State of Ohio. (*Id*.) GCU informed Perrow that if she wanted to become a certified teacher, she would have to re-enroll in the correct program at her own expense. (*Id*. at ¶ 18.) Perrow has now re-enrolled in the correct program. (*Id*. at ¶ 19.) She will not be eligible to become a certified teacher in Ohio until she completes the two-year program and the obtains the requisite student teaching experience. (*Id*.)

Perrow filed her complaint in the instant case alleging negligence, fraudulent inducement, and unjust enrichment. She seeks damages totaling approximately $120,000.[1]

---

[1]Perrow's complaint alleges only an amount "in excess of" $50,000 in damages. However, when GCE and GCU moved for this case to be removed from state court to federal court, they included in their motion an affidavit from Kathryn Dillon Hogan, the University Registrar and Vice President for State Compliance at GCE. Hogan's affidavit stated that she received an electronic correspondence from Perrow alleging that her damages exceeded $120,000. Where, as here, the amount in controversy requirement is not clearly established in the complaint, "the court may inquire by affidavits or otherwise, into the facts as they exist." *Land v. Dollar*, 330 US 731, 735 n.4 (1947). Based upon Hogan's affidavit, the Court has diversity jurisdiction over this case.

## B. PROCEDURAL BACKGROUND

Perrow filed her original complaint in state court. GCE and GCU then removed the case to this Court based upon diversity jurisdiction. GCE and GCU filed motions to dismiss, alleging, among other things, that Perrow had failed sufficiently to plead personal jurisdiction over the defendants. Perrow then filed an amended complaint, alleging facts supporting personal jurisdiction. GCE and GCU renewed their motions to dismiss, removing the argument regarding failure sufficiently to plead personal jurisdiction.

## III. STANDARD OF REVIEW

GCE and GCU have filed motions to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction. The plaintiff bears the burden of proving personal jurisdiction exists. *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996). In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). When the Court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing on the issue of personal jurisdiction, however, the plaintiff "'need only make a *prima facie* showing of jurisdiction.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)) (internal citation omitted). The plaintiff can make this *prima facie* showing by "'establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction.'" *Neogen Corp.*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

In deciding a Rule 12(b)(2) motion to dismiss, the Court is to construe the facts in the light most favorable to the non-moving party. Significantly, the Court is not to weigh the controverting assertions of the party seeking dismissal. *CompuServe*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459). This refusal to weigh the defendants' controverting assertions is necessary to prevent non-resident defendants from avoiding jurisdiction simply by filing an affidavit that denies all jurisdictional facts. *Compuserve*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459).

## IV. LAW AND ANALYSIS

A federal court sitting in a diversity matter can exercise personal jurisdiction over a defendant if jurisdiction is "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 369 (6th Cir. 2006) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002)). The Court is satisfied in this case that both requirements are met.

### A. OHIO'S LONG-ARM STATUTE

Plaintiff contends that four separate sections of Ohio's long-arm statute support this Court's exercise of personal jurisdiction over the defendants. Because the Court is convinced that personal jurisdiction is proper based upon section (A)(4), dealing with tortious activity occurring outside the forum state causing injury in the forum state, the other three sections will not be addressed.

Pursuant to Ohio's long-arm statute, a court may properly exercise personal jurisdiction over a non-resident defendant who "caus[es] tortious injury in [Ohio] by an act or omission

outside [Ohio] if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Ohio]." Ohio Rev. Code § 2307.382(A)(4). Section (A)(4) of the statute "'require[s] a finding that (1) an act or omission outside the state caused tortious injury in Ohio, and (2) the defendant regularly conducted activity in Ohio.'" *Bird,* 289 F.3d at 876 (quoting *Estate of Poole v. Grosser*, 731 N.E.2d 226, 229 (Ohio App. 1999)). A defendant need not be physically present in the forum state for personal jurisdiction to exist. *Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 1994).

Perrow's allegations support a conclusion that Defendants committed an act outside of Ohio that caused tortious injury in Ohio. Perrow alleges that Defendants, while located in Arizona, engaged in conduct that constituted negligence, fraudulent inducement, and unjust enrichment. She also alleges that she, while located in Ohio, suffered damages in excess of $120,000 as a result of Defendants' conduct. At this stage in the litigation, Perrow has sufficiently alleged facts supporting jurisdiction under Ohio's long-arm statute. *See Neogen*, 282 F.3d at 888 (holding that plaintiff had "presented a prima facie case" that the court could exercise personal jurisdiction over the defendant pursuant to the tortious conduct section of Michigan's long-arm statute "based upon [the plaintiff's] allegation that the use of [the defendant's] website and tradename in dealing with its Michigan customers has caused an adverse economic effect upon [the plaintiff] in Michigan"); *see also Bird*, 289 F.3d at 872 ("Although this reasoning lacks any direct factual support, we must draw all permissible inferences in favor of [the plaintiff] at this stage of the proceedings, because no evidentiary hearing or discovery has occurred.").

Perrow must also establish that Defendants "regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods use or consumed or services rendered in [Ohio]." Ohio Rev. Code § 2307.382(A)(4). The analysis here mirrors that to used determine "purposeful availment" for due process purposes. *See Bird*, 289 F.2d at 876 (finding that defendant "regularly conducted activity in Ohio" based upon a finding that defendant purposefully availed itself of the benefits of doing business in Ohio).[2] Because, as discussed below in the due process analysis, the Court finds that defendants have purposefully availed themselves of the benefits of doing business in Ohio, the Court finds that Defendants regularly conduct business in Ohio.

Perrow has therefore established a prima facie case that this Court's exercise of personal jurisdiction over Defendants is authorized by Ohio's long-arm statute.

**B. DUE PROCESS**

In evaluating whether personal jurisdiction complies with due process, the Court must determine whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "'traditional notions of fair play and substantial justice.'" *Bird*, 289 F.3d at 872 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Sixth Circuit has adopted a three-part test for determining whether the exercise of personal jurisdiction over an out-of-state defendant comports with due process: (1) "the defendant must

---

[2] While the Sixth Circuit has "recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits," it has "consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice'" when analyzing the propriety of personal jurisdiction under Ohio's long-arm statute. *Bird*, 289 F.3d at 871 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco*, 401 F.2d 374, 381 (6th Cir. 1968). As discussed fully below, the Court finds all three requirements to be satisfied in this case.

### 1. Purposeful Availment

A defendant may purposefully avail himself of the privilege of acting in a forum state by operating a website, "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). Simply maintaining a passive website, however, is not enough: "[t]he level of contact with a state that occurs simply from the fact of a website's availability on the internet is . . . an 'attenuated' contact that falls short of purposeful availment." *Neogen*, 282 F.3d at 890 (quoting *Bensusan Rest. Corp. v. King*, 937 F.Supp. 295, 300 (S.D.N.Y. 1996)). Maintaining a website through which residents of the forum state can and do submit orders and make purchases, on the other hand, can be sufficient to establish purposeful availment. *Bird*, 289 F.3d at 874-75. *See also Neogen*, 282 F.3d at 890 (holding that the defendant purposefully availed himself of the privilege of doing business in the forum state by granting resident-clients passwords to access services on the website and welcoming the business of forum-state residents on a regular basis).

Courts analyzing whether courts may exercise personal jurisdiction over online universities located in other states have reached varied results.[3] The Third Circuit Court of Appeals found that the United States District Court for the District of Delaware could not exercise personal jurisdiction over an online university located in Alabama, where the university only interacted with two students located in Delaware; there was no evidence that the university intended to provide educational services specifically in Delaware; and the student-Plaintiff was domiciled in Connecticut when she enrolled at the university, and failed to inform the university of her temporary relocation to Delaware. *Kloth v. Southern Christian University*, 320 F. App'x. 113, 117 (3d Cir. 2008). In contrast, the District Court for the District of New Jersey found that it could properly exercise personal jurisdiction over an online university based in Minnesota, where the university recruited students from New Jersey, advertised in New Jersey, accepted enrollment and class registration from students in New Jersey, and provided educational services to students in New Jersey. *Watiti v. Walden University*, 2008 WL 2280932, at *7-*8 (D.N.J. 2008).

---

[3]Defendants urge the Court to analogize this case to *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 5is9 (3d Cir. 1985). In that case, the court found that a Pennsylvania district court could not exercise personal jurisdiction over a university based in Grenada simply because some students at the university hailed from Pennsylvania, and the university had advertised in the *The New York Times* and *The Wall Street Journal*. *Gehling*, 773 F.2d at 542-43. The Court finds that case distinguishable, however, based upon the fact that the university at issue there was a traditional "bricks and mortar" university; students at that university were educated on-site in Grenada, not at home in the forum state. Here, Perrow did not travel to Arizona to receive her education; she received it from her own home in Ohio. In fact, while all educational services at a traditional university are provided in one location, online universities are specifically designed conveniently to provide education to students in all locations, eliminating the requirement that the student travel to the university's location to complete course work.

The Court finds that Defendants have purposefully availed themselves of the benefits of doing business in Ohio. They have set up an "active" website, through which students enroll in classes, receive course assignments, and are automatically enrolled in new classes upon their successful completion of their current classes. In addition, students are assigned usernames and passwords to log in to the school's website, and additional course materials, including textbooks, are shipped to students' homes from the university's location in Arizona. *See Neogen*, 282 F.3d at 892 ("When NGS mails these test results to Michigan customers, or sends him a password to be used interactively on its website, NGS reaches out to Michigan to perform its services there."). This case can be distinguished from *Kloth*, in which the Third Circuit found that the defendant online university had not purposefully availed itself of the benefits of doing business in the forum state. In *Kloth*, the online university had only had contact with two students from the forum state, and the university was unaware that the plaintiff ever resided in the forum state. 320 F. App'x. at 117. Here, Defendants are in contact with approximately 1,000 Ohio residents, and they had repeated contacts with Perrow, fully aware that she was located in Ohio.

Defendants' conduct here is more like that of the online university at issue in *Watiti*. There, the District Court for the District of New Jersey found that the online university's solicitation of students in the forum state, acceptance of registration and enrollment from multiple students in the forum state, and provision of educational services to students in the forum state were sufficient to allow the court to exercise personal jurisdiction over the university. *Watiti*, 2008 WL 2280932, at *7-*8. Here, Defendants' solicitation of students in Ohio is in dispute, but Defendants concede that at least one representative of the university

-9-

regularly attends a nursing career fair in Ohio. (Hogan Aff. at ¶ 13.) More importantly, though, Defendants are in the regular business of accepting registration and re-enrollment from students in Ohio, and they provide educational services to students in Ohio.[4]

Based upon Defendants' interaction with Perrow, fully aware that she was a resident of Ohio, and Defendants' presumably similar interaction with approximately 1,000 other Ohio residents, the Court finds that Defendants have purposefully availed themselves of the benefit of doing business in Ohio.

### 2. Arise from Activities in Forum State

The second due process requirement is that the cause of action must arise from the defendant's activities in the forum state. *S. Mach. Co.*, 401 F.2d at 381. To meet this requirement, a plaintiff must establish at least a "causal connection" between the defendant's activities in the forum state and the harm to the plaintiff. *Neogen*, 282 F.3d at 892. Where, as here, "a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994)). There can be no doubt that Perrow's allegations of negligence, fraudulent inducement, and unjust enrichment arise out of Defendants' activities in Ohio – her allegations stem from Defendant's provision of educational services to her in Ohio. As a result, the second due process requirement is met.

---

[4] The exact number of students enrolled from Ohio is unknown, but Defendants concede that it is somewhere on the order of, though fewer than, 1,000. (Hogan Aff. at ¶ 8.)

### 3. Substantial Enough Connection to Make Jurisdiction Reasonable

The final due process requirement is that there be a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *S. Mach. Co.*, 401 F.2d at 381. When the first two prongs of the due process inquiry have been satisfied, Ohio courts will "presume the specific assertion of personal jurisdiction was proper." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998). When making this reasonableness inquiry, courts are to consider several factors, "including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *CompuServe*, 89 F.3d at 1268 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988)).

While Defendants would no doubt be burdened by defending this lawsuit in Ohio, given that they are based in Arizona, they knew they were engaging in business with almost 1,000 Ohio residents, including Perrow, when they accepted their registration and enrollment, shipped them course materials, and answered questions regarding whether their curriculum would satisfy Ohio teacher certification requirements. *See CompuServe*, 89 F.3d at 1268 ("It may be burdensome for [the defendant] to defend a suit in Ohio, but he knew when he entered into [business] with [the plaintiff] that he was making a connection with Ohio, and presumably he hoped that connection would work to his benefit."); *Bird*, 289 F.3d at 875 ("Although [the defendants] might face a burden in having to defend a lawsuit in Ohio, they cannot reasonably object to this burden given that [they have] allegedly transacted business with 4,666 Ohio residents.").

Ohio also has an interest in protecting its citizens. *See id*. While this case does not involve an Ohio company or business-specific interests, *cf. id*. ("Ohio has a legitimate interest in protecting the business interests of its citizens."); *CompuServe*, 89 F.3d at 1268 ("Ohio has a strong interest in resolving a dispute involving an Ohio company."), Ohio's interest in protecting its citizens is not significantly diminished simply because this case involves an individual rather than a corporation. Perrow also clearly has an interest in obtaining relief in this case – she alleges that Defendants have delayed her teaching certificate by two years, and caused her to pay for two extra, unnecessary years of course work. While Arizona may have an interest in adjudicating a claim involving one of its corporations, "this interest does not override the other factors suggesting that personal jurisdiction in Ohio is reasonable." *Bird*, 289 F.3d at 876.

Given the presumption of reasonableness that arises from the Court's finding of purposeful availment and harm arising out of Defendants' contacts with Ohio, and the fact that the Court must "consider[] the pleadings and affidavits in a light most favorable to [the plaintiff]," *CompuServe*, 89 F.3d at 1268, the Court finds that Defendants have substantial enough connections with Ohio to make personal jurisdiction reasonable. All three requirements of due process are therefore met.

## V. CONCLUSION

This Court's exercise of personal jurisdiction over GCE and GCU comports with both Ohio law and due process. GCE and GCU's motions to dismiss are therefore **DENIED**.

**IT IS SO ORDERED.**

           <u>/s Algenon L. Marbley</u>
           **ALGENON L. MARBLEY**
           **UNITED STATES DISTRICT JUDGE**

**Dated: January 15, 2010**